No. 13-1738
_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
RICHMOND, VIRGINIA
_____

HOBET MINING, LLC,

Petitioner

v

CARL R. EPLING, JR.,

Respondent,

and

DIRECTOR, OWCP, UNITED STATES DEPARTMENT OF LABOR,

Party-in-Interest.
_____

ON PETITION FOR REVIEW OF A DECISION AND ORDER
OF THE BENEFITS REVIEW BOARD
UNITED STATES DEPARTMENT OF LABOR
_____

**RESPONSE BRIEF OF RESPONDENT,
CARL R. EPLING, JR.**

_____

Leonard J. Stayton
Attorney at Law
P.O. Box 1386
Inez, KY  41224
(606) 298-5117
*Counsel for Carl R. Epling, Jr.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of __all__ parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1738__        Caption: __Hobet Mining, LLC v. Carl Epling, Jr.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Carl Epling, Jr.__
(name of party/amicus)

_____

who is _____Respondent_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/Leonard J. Stayton                          Date:        01/28/14

Counsel for: Carl Epling, Jr.

## CERTIFICATE OF SERVICE
**************************

I certify that on _____01/28/14_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Ms. Betty English: english.betty@dol.gov
Ms. Ashley Harmon: aharman@jacksonkelly.com
Ms. Sarah Marie Hurley: hurley.sarah@dol.gov
Mr. Thomas O. Shepherd, Jr., Clerk (aty): shepherd.thomas@dol.gov
Mr. Gary K. Stearman: stearman.gary@dol.gov
Ms. Rae Ellen James: BLLS-SOL@dol.gov

/s/Leonard J. Stayton                                     01/28/14
_____                                   _____
     (signature)                                              (date)

ii

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
|  | Corporate Disclosure Statement | i-ii |
|  | Table of Contents | iii-iv |
|  | Table of Authorities | v-viii |
| I. | Statement of Issues | 1 |
| II. | Counterstatement of the Case | 1 |
| III. | Counterstatement of Facts | 5 |
| IV. | Summary of Argument | 11-12 |
| V. | Argument | 13-44 |
|  | Standard of Review | 13 |
|  | Discussion of Issues | 13-44 |
| 1. | The administrative law judge properly discredited the opinion of Dr. Hippensteel concerning the cause of the miner's disability | 13-25 |
| a. | While the employer is incorrect that the administrative law judge mischaracterized what CT scans Dr. Hippensteel reviewed such argument is irrelevant as the portion of the administrative law judge's findings which the employer addresses in this argument pertains to the administrative law judge's findings as to the existence of pneumoconiosis, not the issue of disability causation. | 17-20 |
| b. | The administrative law judge properly discounted Dr. Hippensteel's opinion as to the cause of the miner's pulmonary impairment. | 20-25 |

2.  The employer is incorrect in its reliance upon          25-29
    Securities and Exchange Commission v. Chenery
    Corp., 318 U.S. 80 (1942)

3.  The employer's argument that the administrative          29-37
    law judge impermissibly restricted its means of
    rebuttal with regard to the presumption at 30 U.S.C.
    § 921 (c) (4) is incorrect

4.  The Director has the authority to promulgate a           37-40
    regulation which limits an operator to the two
    exclusive methods of rebuttal set forth in 30 U.S.C.
    § 921(c) (4)

5.  The rule out standard is the appropriate standard to     41-43
    to use in determining whether the employer has
    established that the miner's pulmonary impairment
    was not caused by his coal mine dust exposure

6.  The rule out standard play no role in the decision in    43-44
    this case

VI.    Conclusion                                            44

VII.   Request for Oral Argument                             45

VIII.  Addendum of Unpublished Cases

IX.    Certificate of Compliance

X.     Certificate of Service

## TABLE OF AUTHORITIES

Page

### Cases

Bethlehem Mines Corp. v. Massey, 736 F. 2d 120     34, 37, 42
    (4th Cir. 1984)

Big Branch Resources, Inc. v. Ogle, 737 F. 3d     36, 42
    1063 (6th Cir. 2013)

Chevron U.S.A., Inc. v. Natural Resources Defense     13, 38
    Council, Inc., 467 U.S.837, (1984)

Citizens to Preserve Overton Park v. Volpe, 401 U.S.     26
    402 (1971)

Clinchfield Coal Co. v. Fleming, 606 F. 2d 441 (4th Cir. 1979)     34, 37, 38,
    40, 42

Colony, Inc. v. Commissioner, 357 U.S. 28 (1958)     39

Denver & R.G.W.R. Co. v. Union P.R. Co.,     27
    351 U.S. 321, (1956)

Doss v. Director, OWCP, 53 F. 3d 654, (4th Cir. 1995)     14

Dow Agrosciences, LLC v. National Marine     26-27
    Fisheries Service, 707 F. 3d 462 (4th Cir. 2013)

Hampton v. Department of Labor, 678 F. 2d 506     37
    (4th Cir. 1982)

Harman Mining Co. v. Director, OWCP,     13
    678 F. 3d 305, (4th Cir. 2012)

Morrison v. Tennessee Consolidated Coal Co., 644 F. 3d     29, 35-36,
    473, (6th Cir. 2011)     38

Palmer Coking Coal Co. v. Director, OWCP, 720 F. 2d
    1054 (9th Cir. 1983)    42

Pavesi v. Director, OWCP, 758 F. 2d 956 (3rd Cir. 1985)    32

Rose v. Clinchfield Coal Co., 614 F. 2d 936 (4th Cir. 1980)    34,37,38,42

Rosebud Coal Sales Co. v. Weigand, 831 F. 2d 926
    (10th Cir. 1987)    42, 43

Scott v. Mason Coal Co., 289 F. 3d 263 (4th Cir. 2002)    23, 44

Securities and Exchange Commission v. Chenery Corp.,
    318 U.S. 80 (1942)    12,25,26,27,
    28

Shonborn v. Director, OWCP, 8 BLR 1-434 (1986)    32

Stiltner v. Island Creek Coal Co., 86 F. 3d 337,
    (4th Cir. 1996)    42

U.S. v. Aramony, 166 F. 3d 655 (4th Cir. 1999)    24, 25

U.S. v. Home Concrete & Supply, LLC,
    132 S.Ct. 1836 (2012)    39, 40

U.S. v. Laird, 494 F. 2d 709 (4th Cir. 1974)    27

U.S. v. Langley, 62 F. 3d 602, (4th Cir. 1995)
    (4th Cir. 1995)    40

Usery v. Turner-Elkhorn Mining Co., 428 U.S. 1 (1976)    30,31, 32,
    39,40

Westmoreland Coal Co. v. Cochran, 718 F. 3d
    319 (4th Cir. 2013)    14

Westmoreland Coal Co., Inc. v. Director, OWCP [Swiney],
    2013 WL 5405499 (4th Cir. 9/27/13) (unpub.)    35, 37, 38,
    42

Statutes

§ 411 (c) (4)                                               3, 4

30 U.S.C. § 901 (a)                                         29

30 U.S.C. § 921                                            37

30 U.S.C. § 921 (c) (4)                                    1,12,29,30,
                                                           31, 32, 33,
                                                           34,35,36,37,
                                                           38,39,40,45

Black Lung Benefits Reform Act of 1977, Pub. L.            31
    95-239 Section 2 (b), 92 Stat. 95 (March 1, 1978)

Pub. L. No. 111-148 § 1556 (a), 124 Stat. 199 (2010)       30

Regulations

20 C.F.R. § 718.201                                         32, 35, 42

20 C.F.R. § 718.201 (a) (2)                                 29, 32

20 C.F.R. § 718.201 (b)                                     32

20 C.F.R. § 718.201 (c)                                     23

20 C.F.R. § 718.305                                         2,12,33,34,
                                                           35,36,37,38,
                                                           43

20 C.F.R. § 718.305 (a)                                     35

20 C.F.R. § 718.305 (d) (i) (A,B), (ii)                     12,35

20 C.F.R. § 718.305 (d) (ii)                                42

20 C.F.R. § 727.203 (b) (3)                                 34, 43

<u>Treatise</u>

2 Davis Administrative Law Judge, § 16.12 at p. 482                27

I.        STATEMENT OF ISSUES

1.      Whether the Administrative Law Judge's Decision to Award Benefits is Based Upon Substantial Evidence.

2.      Whether the Administrative Law Judge Properly Applied 30 U.S.C. § 921 (c) (4).

II.      COUNTERSTATEMENT OF THE CASE

1.      ALJ Decision and Order on Remand
         Awarding Benefits, 4/20/12

The administrative law judge found that since Dr. Hippensteel had not reviewed the positive CT scan readings from Drs. Miller and Siegler at the time of his 3/25/11 deposition, he did not credit Dr. Hippensteel's conclusion in his 3/25/11 deposition concerning simple pneumoconiosis. Moreover, the administrative law judge noted that Dr. Hippensteel, after reviewing the 1/7/11 CT scan, diagnosed simple pneumoconiosis. (JA, pg. 80).

Considering the chest x-ray evidence, CT scan evidence, medical records, and physician opinion evidence together, the administrative law judge found that the claimant had established the presence of clinical pneumoconiosis. (pp. 9-10).

With regard to the causation of the miner's clinical pneumoconiosis, the administrative law judge found that as the claimant had greater than ten years of coal mine employment, he was entitled to the presumption that his pneumoconiosis was caused by his coal mine dust exposure. The administrative law judge found that such presumption was not rebutted. Accordingly, the administrative law judge

found that the miner's pneumoconiosis had been caused by his coal mine employment.  (JA, pg. 81).

The administrative law judge noted that the PPACA amendments effectively eliminate subpart (e) of 20 C.F.R. § 718.305.  The administrative law judge noted that under the amendment, in cases arising in the Fourth Circuit, the employer must rule out the causal relationship between the miner's pulmonary impairment and his coal mine dust exposure.  The administrative law judge noted that Mr. Epling has greater than 15 years of underground coal mine employment and that his claim was filed after January 1, 2005.  (JA, pg. 82-83).

With regard to total disability, the administrative law judge noted that there was one qualifying exercise arterial blood gas study and one qualifying resting arterial blood gas study.  The administrative law judge noted that the resting 3/14/07 arterial blood gas study was nonqualifying. (JA, pg. 84).

The administrative law judge found that the miner's last coal mine employment required heavy manual labor.  The administrative law judge found that because the miner's symptoms render him unable to walk distances without shortness of breath, the miner is incapable of performing his prior coal mine employment.  (JA, pg. 84).

With regard to the medical opinion evidence as to total disability, the administrative law judge found that both Drs. Ranavaya and Crisalli agreed that the

miner has a totally disabling pulmonary impairment. The administrative law judge found that as Dr. Crisalli is better qualified than Dr. Hippensteel and as, to a lesser extent, Dr. Crisalli's opinion is corroborated by the opinion of Dr. Ranavaya, the miner's testimony, and the one qualifying arterial blood gas study, the medical opinion evidence establishes total disability.  (JA, pg. 85).

With regard to Dr. Hippensteel's opinion as to disability causation, the administrative law judge found that Dr. Hippensteel's comment that it would be unusual for the miner to develop coal workers' pneumoconiosis ten years after the cessation of his coal mine employment, although not hostile to the Act, certainly was not in accord with the accepted view that coal workers' pneumoconiosis can be both latent and progressive.  The administrative law judge found that, given this view and the fact of Dr. Hippensteel's opinion in his 3/25/11 deposition not finding coal workers' pneumoconiosis, Dr. Hippensteel's opinion was entitled to little weight.  (JA, pg. 89).

2.        BRB Decision and Order, 4/16/13

The Benefits Review Board rejected the employer's argument that the administrative law judge applied an improper rebuttal standard under amended § 411 (c) (4).  The Board found that, in light of the fact that the administrative law judge found that the claimant had invoked the presumption of total disability due to pneumoconiosis at § 411 (c) (4) the burden of proof properly shifted to the

employer to establish rebuttal by disapproving the existence of pneumoconiosis or by proving that the miner's totally disabling pulmonary impairment did not arise out of, or in connection with, coal mine employment. (JA, pg. 97).

The Benefits Review Board held that since the administrative law judge found that the x-ray, CT scan, and medical opinion evidence affirmatively established the existence of clinical pneumoconiosis, a finding that the employer did not challenge on appeal, the administrative law judge's finding that the employer did not rebut the § 411 (c) (4) presumption by disproving the existence of pneumoconiosis would be affirmed. The Board further found that the administrative law judge properly found that the opinions of Drs. Crisalli and Hippensteel were not sufficient to establish that the miner's pulmonary impairment had not been contributed to by his coal mine dust exposure. (JA, pg. 97-99).

The Benefits Review Board specifically affirmed the administrative law judge's rejection of the opinions of Drs. Crisalli and Hippensteel due to the fact that neither Drs. Crisalli nor Hippensteel diagnosed clinical pneumoconiosis in their opinions where they addressed disability causation. The Benefits Review Board acknowledged that in a report dated February 4, 2012 Dr. Hippensteel did diagnose pneumoconiosis. However, the Board noted that Dr. Hippensteel's opinion as to the cause of the miner's pulmonary was set forth in reports and depositions that predated Dr. Hippensteel's acceptance of a diagnosis of clinical

4

pneumoconiosis. Therefore, since Dr. Hippensteel's disability causation opinion did not incorporate his later finding of pneumoconiosis, the Board found that the administrative law judge properly rejected Dr. Hippensteel's opinion as to disability causation. (JA, pg. 98-99).

### III.    COUNTERSTATEMENT OF FACTS
#### Medical Evidence
#### X-RAY EVIDENCE
#### 11/26/07 X-RAY

| Exhibit No. | Physician | Qualifications | Reading | Date of Reading |
|---|---|---|---|---|
| CX 2 (JA, pg. 172-173) | J. Willis | B/BCR[1] | 1/1 | 11/28/07 |
| CX 4 (JA, pg. 169-170) | J. Wiot | B/BCR | l/2 | 4/19/08 |
| EX 10 (JA, pg. 171) | J. Scatarige | B/BCR | 0 | 8/26/08 |

#### 3/14/07 X-RAY

| Exhibit No. | Physician | Qualifications | Reading | Date of Reading |
|---|---|---|---|---|
| CX 1 (JA, pg. 128-129) | M. Alexander | B/BCR | 1/1 | 2/23/08 |
| CX 7 (JA, pg. 121-122) | A. Ahmed | B/BCR | 1/1 | 10/19/08 |

[1] "B" indicates the physician is a B reader while "BCR" indicates the physician is a Board certified radiologist.

| | | | | |
|---|---|---|---|---|
| DX 12 (JA, pg. 120) | M. Ranavaya | B | l/2 | 3/14/07 |
| CX 6 (JA, pg. 126-127) | T. Miller | B/BCR | 2/3 | 6/24/08 |
| EX 5 (JA, pg. 125) | P. Wheeler | B/BCR | 0 | 11/19/07 |
| EX 6 (JA, pg. 123) | W. Scott | B/BCR | 0 | 11/19/07 |
| EX 6 (JA, pg. 124) | J. Scatarige | B/BCR | 0 | 11/19/07 |

## CT SCAN EVIDENCE

### 4/7/11 CT SCAN

| Exhibit No. | Physician | Qualifications | Reading | Date of Reading |
|---|---|---|---|---|
| CX 10 (JA, pg. 298-299) | C. Siegler | B/BCR | Changes of pneumo-coniosis in the upper lobes appear stable from 1/7/11. The nodular density in the left upper lobe is unchanged as well. | 4/18/11 |

### 1/7/11 CT SCAN

| Exhibit No. | Physician | Qualifications | Reading | Date of Reading |
|---|---|---|---|---|
| CX 8 (JA, pg. 261) | T. Miller | B/BCR | Complicated pneumoconiosis, | 2/27/11 |

6

| Exhibit No. | Physician | Qualifications | Reading | Date of Reading |
|---|---|---|---|---|
| | | | diffuse ILD compatible with pneumoconiosis. | |
| CX 7 (JA, pg. 259-260) | R. McWhorter | B/BCR | Findings are consistent with coal workers' pneumoconiosis. The beginning of PMF may be present in the upper lobes but continued followup of the patient is recommended to exclude malignancy. | 1/10/11 |
| EX 15 (JA, pg. 258) | K. Hippensteel | B | Findings are consistent with simple pneumoconiosis. | 2/4/12 |

<u>4/12/07 CT SCAN</u>

| Exhibit No. | Physician | Qualifications | Reading | Date of Reading |
|---|---|---|---|---|
| CX 15 (JA, pg. 167) | T. Miller | B/BCR | There is diffuse interstitial lung disease of moderate severity compatible with pneumoconiosis. There is a coalescence of small opacities in the left upper lobe. | 2/10/12 |
| EX 2 (JA, pg. 138) | K. Dwyer | | Small nodule in the upper left lung which was not obviously obviously calcified and may represent a gramuloma. | 4/12/07 |

7

## 7/16/07 CT SCAN

| Exhibit No. | Physician | Qualifications | Reading | Date of Reading |
|---|---|---|---|---|
| CX 16 (JA, pg. 168) | T. Miller | B/BCR | There is diffuse interstitial lung disease of moderate severity compatible with pneumoconiosis. There is a coalescence of small opacities in the left upper lobe. | 2/10/12 |
| EX 2 (JA, pg. 143) | G. Wilson | | Calcified and noncalcified pulmonary nodules and apical scarring. No acute disease is represented with the CT scan being indicative of granulomatous disease. | 7/16/07 |

## PULMONARY FUNCTION STUDIES

| Exhibit No. | Physician | Date of Testing | Pre Bronchodilator Studies | Post Bronchodilator Studies | Qualifying |
|---|---|---|---|---|---|
| EX 1 (JA, pg. 180) | R. Crisalli | 11/26/07 | FEV1-2.89 FVC-3.49 FEV1/FVC%-83.8 MVV-130 | | no |
| DX 12 (JA, pg. 180) | M. Ranavaya | 3/14/07 | FEV1-3.06 FVC-3.57 FEV1/FVC%-85.8 MVV- | | no |

## ARTERIAL BLOOD GAS STUDIES

| Exhibit No. | Physician | Date | Resting | Exercise | Qualifying |
|---|---|---|---|---|---|
| EX 1 (JA, pg. 179) | R. Crisalli | 11/26/07 | PC02-35 P02-64 | | r-yes |
| DX 12 (JA, pg. 179) | M. Ranavaya | 3/14/07 | PC02-41.7 P02-78 | PC02-38.5 P02-60.3 | r-no e-yes |

## EXAMINING PHYSICIAN TESTIMONY

| Exhibit No. | Physician | Date of Report | Comments |
|---|---|---|---|
| DX 12; CX 14 (JA, pg. 116-119, 334-416) | M. Ranavaya | 3/14/07, 12/21/11 | Dr. Ranavaya diagnosed pneumoconiosis and hypertension. Dr. Ranavaya related the pneumoconiosis to Mr. Epling's coal mine dust exposure. Dr. Ranavaya diagnosed a moderate pulmonary impairment as reflected by the moderate hypoxemia during exercise which meets the ABG standards of disability for the Department of Labor. The miner's pneumoconiosis contributes to his disability to a major extent. Prior to Dr. Ranavaya's deposition, Dr. Ranavaya had the opportunity to review all of the evidence of record. Dr. Ranavaya was of the opinion that, consistent with the progression of the disease as shown by the overall medical evidence, Mr. Epling has complicated pneumoconiosis causing his pulmonary impairment. |

| EX 1, 8, 12, 14 (JA, pg. 174-183, 217-247, 250-251, 301-333) | R. Crisalli | 2/11/08, 6/23/08, 11/30/10, 4/21/11 | Mr. Epling does not have pneumoconiosis. Dr. Crisalli stated that while Mr. Epling may be disabled by his pulmonary impairment, the pulmonary impairment is related to Mr. Epling's obesity and obstructive sleep apnea, rather than his coal mine dust exposure. |

## REVIEWING PHYSICIAN TESTIMONY

| Exhibit No. | Physician | Date of Report | Comments |
| --- | --- | --- | --- |
| EX 4, 7, 11, 13, 15, 16 (JA, pg. 184-216, 248-249, 258, 262-297, 417-420) | K. Hippensteel | 5/16/08, 5/30/08, 11/23/10, 3/25/11, 2/4/12, 2/19/12 | In Dr. Hippensteel's 5/16/08 and 11/23/10 reports and 5/30/08 and 3/25/11 depositions Dr. Hippensteel equivocated concerning the existence of pneumoconiosis before concluding that Mr. Epling does not have pneumoconiosis. In these reports and depositions Dr. Hippensteel gave the opinion that Mr. Epling's impairment was not caused by his coal mine dust exposure. In Dr. Hippensteel's 2/4/12 and 2/19/2 reports he finally acknowledged that Mr. Epling does have coal workers' pneumoconiosis but did not discuss disability causation. |

<u>TREATMENT RECORDS</u>

| Exhibit No. | Physician | Date of Report | Comments |
|---|---|---|---|
| CX 11, 13 (JA, pg. 252-257) | K. Marzouk | 12/28/10-4/19/11 | Mr. Epling has been diagnosed with pneumoconiosis. Dr. Marzouk noted that the 1/7/11 CT scan was consistent with coal workers 'pneumoconiosis with the beginning of early progressive massive fibrosis. Dr. Marzouk noted that the 4/7/11 CT scan showed the same changes, showing that the changes of pneumoconiosis in the upper lobes are stable from the time of the CT scan in 2007, stating that the 2007 CT scan also showed changes of coal workers' pneumoconiosis. |
| EX 2 (JA, pg. 130-147) | D. Moore | 3/23/07-11/30/07 | Mr. Epling's treatment consisted of treatment for hypertension, hyperlipidemia, pain in the left leg, chronic back pain, and sleep apnea. |
| EX 3 (JA, pg. 148-166) | G. Zaldivar | 3/30/07-4/11/07 | Dr. Zaldivar's records reflect that Dr. Zaldivar treated Mr. Epling for obstructive sleep apnea, gastric reflux by history, and hypertension. |

IV.    <u>SUMMARY OF ARGUMENT</u>

While the administrative law judge is correct as to what CT scan evidence

Dr. Hippensteel reviewed, the employer's argument that the ALJ erred in his

11

characterization of what evidence Dr. Hippensteel reviewed is irrelevant to the issues before this Court as the portion of the judge's decision which the employer refers to only addresses the existence of pneumoconiosis, an issue which is not before this Court. As Dr. Hippensteel mistakenly did not diagnose pneumoconiosis when he gave his opinions concerning disability causation, the administrative law judge properly discounted Dr. Hippensteel's opinions as to disability causation due to his mistaken belief that pneumoconiosis was not present.

As there is no separation of powers issue in this appeal <u>Securities and Exchange Commission v. Chenery Corporation</u>, 318 U.S. 80 (1942) does not apply to this appeal.

The administrative law judge properly limited the employer to the two rebuttal methods of 30 U.S.C. § 921 (c) (4), 20 C.F.R. § 718.305 (d) (i) (A, B), (ii). The Director had the authority to promulgate the 2013 version of 20 C.F.R. § 718. 305.

The rule out standard is the appropriate standard to be used in addressing disability causation as such standard is consistent with the prior precedent of this Court and other circuits. As the administrative law judge did not use the rule out standard to find that the employer had not established that the miner's pulmonary impairment was not related to his coal mine employment, the issue of whether the

rule out standard is the appropriate standard in addressing disability causation is not properly before this Court.

V.        <u>ARGUMENT</u>

A.      STANDARD OF REVIEW

The standard of review is whether "substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the Board and ALJ are rational and consistent with applicable law." <u>Harman Mining Company v. Director, OWCP</u>, 678 F. 3d 305, at 310 (4th Cir. 2012).  As the Director is the administrator of the Black Lung Benefits Act, the construction of a statute by the Director is entitled to deference.  <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, at 842 (1984).

B.      DISCUSSION OF ISSUES

1.    THE ADMINISTRATIVE LAW JUDGE PROPERLY DISCREDITED THE OPINION OF DR. HIPPENSTEEL CONCERNING THE CAUSE OF THE MINER'S DISABILITY

The decision of the administrative law judge will be affirmed so long as the decision of the administrative law judge is based upon substantial evidence. <u>Harman Mining Company v. Director, OWCP</u>, 678 F. 3d 305 (4th Cir. 2012).  The administrative law judge, as the trier of fact, "is charged with making factual findings, including evaluating the credibility of witnesses and weighing

13

contradicting evidence." Doss v. Director, OWCP, 53 F. 3d 654, at 658 (4th Cir. 1995). It is the role of the administrative law judge, not the appellate court, to resolve the battle of the experts. Westmoreland Coal Company v. Cochran, 718 F. 3d 319 (4th Cir. 2013).

The employer argues that the administrative law judge erred in discrediting Dr. Hippensteel's opinion concerning whether the miner's pulmonary impairment had been contributed to by his coal mine dust exposure. As the administrative law judge properly discredited Dr. Hippensteel's opinion concerning disability. causation, the employer's argument to the contrary should be rejected.

The employer argues that the administrative law judge erred in discrediting Dr. Hippensteel's opinion concerning disability causation as the employer argues that, contrary to the administrative law judge's finding, Dr. Hippensteel did review Dr. Miller's reading of the 1/7/11 CT scan and Dr. Siegler's reading of the 4/7/11 CT, the administrative law judge's finding that Dr. Hippensteel's opinion was entitled to less weight due to the fact that Dr. Hippensteel said that it would be unusual to develop coal workers' pneumoconiosis ten years after the claimant had left the mining industry was irrelevant since Dr. Hippensteel ultimately concluded that the miner has simple coal workers' pneumoconiosis, and Dr. Hippensteel ultimately diagnosed coal workers' pneumoconiosis which is contrary to the administrative law judge's conclusion that Dr. Hippensteel did not diagnose coal

workers' pneumoconiosis. As the employer's argument fails to properly address the findings of the administrative law judge, the argument of the employer should be rejected by this court.

We have six separate reports and depositions from Dr. Hippensteel with these consisting of a medical report dated May 16, 2008, a deposition taken on May 30, 2008, a medical report dated November 23, 2010, a deposition taken on March 25, 2011, a report dated February 4, 2012, and a report dated February 19, 2012. (JA, pg. 184-216, 248-249, 258, 262-297, 417-420). Of these reports and depositions, we have two separate subsets.

The first subset of Dr. Hippensteel's reports and depositions consists of Dr. Hippensteel's 5/16/08 report, 5/30/08 deposition, 11/23/10 report, and 3/25/11 deposition. In this first subset Dr. Hippensteel discussed the cause of the miner's pulmonary impairment but equivocated about whether pneumoconiosis was present before finally concluding in his 3/25/11 deposition that pneumoconiosis was not present. (JA, pg. 191, 211-213, 248-249, 273-276).

The second subset of evidence from Dr. Hippensteel consists of his February 4, 2012 report and February 19, 2012 reports. In the 2/4/12 and 2/19/12 reports Dr. Hippensteel finally acknowledged that Mr. Epling does have coal workers' pneumoconiosis. (JA, pg. 258, 419). However, in Dr. Hippensteel's 2/4/12 and

15

2/19/12 reports Dr. Hippensteel did not discuss the question of what has caused the miner's pulmonary impairment. (JA, pg. 258, 417-420).

As argued below, when the administrative law judge discredited Dr. Hippensteel's opinion concerning disability causation, the administrative law judge was discussing the disability causation opinion given by Dr. Hippensteel in the first subset of the evidence from Dr. Hippensteel consisting of his 5/16/08 report, 5/30/08 deposition, 11/23/10 report, and 3/25/11 deposition in which he, as previously noted, while initially equivocating as to whether pneumoconiosis was present, finally concluded in his 3/25/11 deposition that Mr. Epling does not have pneumoconiosis. (JA, pg. 191, 213, 249, 281). As noted, while Dr. Hippensteel eventually, in his 2/4/12 and 2/19/12 reports, (JA, pg. 258, 419), acknowledged that Mr. Epling does have pneumoconiosis, Dr. Hippensteel did not address the issue of disability causation in his 2/4/12 and 2/19/12 reports. (JA, pg. 258, 417-420). Therefore, when the administrative law judge addressed Dr. Hippensteel's opinion concerning disability causation in relation to his finding that Dr. Hippensteel did not find pneumoconiosis to exist it is clear, from reviewing the administrative law judge's finding, that he was referring to Dr. Hippensteel's opinion present in the first subset of Dr. Hippensteel's evidence. (JA, pg. 89). As Dr. Hippensteel did not address the issue of disability causation after he finally made the correct diagnosis of pneumoconiosis, the fact that Dr. Hippensteel did

finally diagnose pneumoconiosis is irrelevant to his disability causation opinions which are present in the first subset of his reports and depositions.

    a.    <u>While the Employer is Incorrect That the Administrative Law Judge Mischaracterized What CT Scans Dr. Hippensteel Reviewed Such Argument is Irrelevant as the Portion of the Administrative Law Judge's Findings Which the Employer Addresses in This Argument Pertains to the Administrative Law Judge's Findings as to the Existence of Pneumoconiosis, not the Issue of Disability Causation</u>

The employer argues that the administrative law judge erred in his characterization of what CT scans Dr. Hippensteel had reviewed. The employer argues that the administrative law judge believed that Dr. Hippensteel did not review the positive CT scan readings from Drs. Miller and Siegler and found Dr. Hippensteel's data incomplete. The employer argues that the administrative law judge erred in so finding as Dr. Hippensteel did review the readings by Dr. Miller of the 1/7/11 CT scan and the reading by Dr. Siegler of the 4/7/11 CT scan. The employer misconstrues the findings of the administrative law judge.

The employer is correct that, by the time of Dr. Hippensteel's 2/19/12 report, Dr. Hippensteel had reviewed Dr. Miller's reading of the 1/7/11 CT scan and Dr. Siegler's reading of the 4/7/11 CT scan although he had still not reviewed Dr. Miller's readings of the 4/12/07 and 7/16/07 CT scans. (JA, pg. 417-419). However, as set forth in the portion of the administrative law judge's findings to

which the employer refers, the administrative law judge was only discussing what

evidence Dr. Hippensteel had reviewed as of the time of his deposition given on

3/25/11:

> By the time of his March 25, 2011 deposition, Dr.
> Hippensteel had seen the 2011 CT readings and Dr.
> Wilson's reading of the 7/16/07 CT. ...Given that
> Dr. Hippensteel did not review the positive CT
> readings from Dr. Miller and Dr. Siegler, I find his
> data was incomplete and do not credit his conclusion
> regarding the existence of simple pneumoconiosis.
> (JA, pg. 80).

The administrative law judge's description of what medical evidence Dr.

Hippensteel had reviewed as of the time of Dr. Hippensteel's 3/25/11 deposition is

consistent with what Dr. Hippensteel testified to reviewing.  Dr. Hippensteel

testified that, as of the time of his 3/25/11 deposition, he had reviewed claimant's

exhibits 1, 2, 4, 5, 6, 7, and 8.  (JA, pg. 266).

Claimant's exhibit 7 is Dr. McWhorter's reading of the 1/17/11 CT scan.

(JA, pg. 259-260).  Claimant's Exhibit 8 is Dr. Miller's reading of the 1/7/11 CT

scan.  (JA, pg. 261).

After Dr. Hippensteel's 3/25/11 deposition the claimant submitted Dr.

Siegler's reading of the 4/7/11 CT scan and Dr. Miller's readings of the 4/12/07

and 7/16/07 CT scans.  (JA, pg. 167-168, 298-299).  As the readings by Dr. Siegler

of the 4/7/11 CT scan and by Dr. Miller of the 4/12/07 and 7/16/07 CT scans were

not performed until after Dr. Hippensteel's deposition of 3/25/11, obviously, Dr.

Hippensteel did not have the opportunity to review those readings prior to his deposition on 3/25/11.

When one considers Dr. Hippensteel's testimony as to what evidence he had reviewed at the time of his 3/25/11 deposition and the dates that the various CT scans were read, it is clear that when the administrative law judge stated that Dr. Hippensteel had seen the 2011 CT readings he was referring to the readings of the 1/7/11 CT scan by Drs. Miller and McWhorter. When the administrative law judge stated that Dr. Hippensteel had not reviewed the positive CT readings from Dr. Miller and Dr. Siegler he was obviously referring to Dr. Siegler's reading of the 4/7/11 CT scan and Dr. Miller's reading of the 4/12/07 and 7/16/07 CT scans. Therefore, as the administrative law judge did properly set forth what medical evidence what Dr. Hippensteel had reviewed as of the time of his 3/25/11 deposition, the employer's argument that the administrative law judge erred in his characterization of what Dr. Hippensteel had reviewed is in error.

While the employer's argument is incorrect, even if such argument was correct, such argument would still be irrelevant to the issues before this Court. The employer does not argue that pneumoconiosis was mistakenly found, rather, the employer contests the issue of disability causation.

The portion of the administrative law judge's findings to which the employer refers in this argument only pertains to the issue of whether pneumo- coniosis had

been established.  The fact that such findings were pertaining to the issue of whether pneumoconiosis exists is clearly shown by the fact that such section is contained in the section under the heading "Existence of Pneumoconiosis".  (JA, pg. 79-81).  Accordingly, since this portion of the administrative law judge's decision only pertained to whether pneumoconiosis had been established, not the issue of disability causation, such argument is irrelevant to the issue before this Court.

          b.        <u>The Administrative Law Judge Properly</u>
<u>Discounted Dr. Hippensteel's Opinion</u>
<u>as to the Cause of the Miner's</u>
<u>Pulmonary Impairment</u>

The administrative law judge gave little weight to Dr. Hippensteel's opinion concerning disability causation due to the administrative law judge's finding that Dr. Hippensteel did not find the presence of coal workers' pneumoconiosis and Dr. Hippensteel commented that it would be unusual for Mr. Epling to have developed pneumoconiosis ten years after he ended his coal mine employment and to have developed such between 2007 and 2011, with the administrative law judge stating that while not "hostile" to the Act, such is certainly not in accord with the accepted view that coal workers' pneumoconiosis is both latent and progressive. (JA, pg. 89).  The employer argues that the administrative law judge errs as Dr. Hippensteel's ultimate conclusion was that the miner did have pneumoconiosis.

The employer is correct that Dr. Hippensteel, on 2/4/12, after reading the 1/7/11 CT scan, stated that the findings were suggestive of mild simple coal workers' pneumoconiosis as well as stating in his report offered on 2/19/12 that Mr. Epling has simple coal workers' pneumoconiosis. (JA, pg. 258, 419). However, the employer ignores the fact that all of Dr. Hippensteel's opinions in this record concerning causation of disability are those opinions given prior to his diagnosis of simple pneumoconiosis on February 4, 2012.

The only records which we have in this claim from Dr. Hippensteel which address causation of pulmonary impairment are Dr. Hippensteel's report dated 5/16/08 and 11/23/10 and his depositions given on 5/30/08 and 3/25/11. (JA, pg. 184-216, 248-249, 262-297). In all of these reports, Dr. Hippensteel parrots the opinions of Dr. Crisalli, whose opinions were properly rejected by the administrative law judge.

In Dr. Hippensteel's initial report prepared on 5/16/08, Dr. Hippensteel stated that Dr. Crisalli made a valid point concerning Mr. Epling's obesity and obstructive sleep apnea which are known aggravating factors to gas exchange and not referable to intrinsic lung disease such as coal workers' pneumoconiosis. Dr. Hippensteel stated that, as Dr. Crisalli noted, with no ventilatory impairment and a normal diffusion capacity such is against an impairment in gas exchange being based on intrinsic lung disease such as coal workers' pneumoconiosis. Dr.

Hippensteel stated that he therefore thought that the miner's hypoxemia was related to conditions that are not referable to coal workers' pneumoconiosis. (JA, pg. 191).

When Dr. Hippensteel testified on 5/30/08, Dr. Hippensteel again stated that the normal ventilatory function and normal diffusion would rule out Mr. Epling's gas exchange impairment being related to coal workers' pneumoconiosis. Dr. Hippensteel again stated that he felt that Mr. Epling's gas exchange abnormalities were related to his sleep apnea associated with his obesity. (JA, pg. 211-212). Dr. Hippensteel reaffirmed his earlier opinions concerning disability causation in his 11/23/10 report. (JA, pg. 248-249).

When Dr. Hippensteel testified on 3/25/11, he again gave the same opinions, basing such opinions, in large part, upon the examination and reasoning of Dr. Crisalli. Dr. Hippensteel testified that, in Dr. Crisalli's examination, there was no evidence of airflow obstruction, no restrictive defect, no air trapping, and no diffusion impairment, which would suggest that the miner's hypoxemia is not related to a diffused impairment such as coal workers' pneumoconiosis. (JA, pg. 273-274). Dr. Hippensteel again stated that Dr. Crisalli's explanation is a valid explanation of the findings in this case. (JA, pg. 275-276).

In Dr. Hippensteel's reports on 5/16/08 and 11/23/10 and in his two depositions given on 5/30/08 and 3/25/11, Dr. Hippensteel equivocated before

concluding that the miner did not have pneumoconiosis. (JA, pg. 191, 213, 249, 281). Furthermore, Dr. Hippensteel gave the opinion that, as the claimant did not have pneumoconiosis, his pulmonary impairment had not been contributed to by his coal mine dust exposure. (JA, pg. 283). Thus, the administrative law judge properly rejected the opinions given by Dr. Hippensteel in his 5/16/08 and 11/23/10 reports and his 5/30/08 and 3/25/11 depositions in light of his failure to properly diagnose pneumoconiosis. Scott v. Mason Coal Co., 289 F. 3d 263 (4th Cir. 2002).

The administrative law judge further properly discounted Dr. Hippensteel's opinion as being contrary to the fact that pneumoconiosis may be latent and progressive as recognized by 20 C.F.R. § 718.201 (c). (JA, pg. 89). Contrary to this regulation, Dr. Hippensteel stated that it would be unusual for Mr. Epling to have developed pneumoconiosis in the ten years since he had ceased his mining career. (JA, pg. 290-292). Therefore, the administrative law judge properly discounted the opinions given by Dr. Hippensteel in his initial reports on 5/16/08 and 11/23/10 and in his two depositions given on 5/30/08 and 3/25/11.

After Dr. Hippensteel properly diagnosed pneumoconiosis in February of 2012, Dr. Hippensteel gave no opinion as to the cause of the miner's pulmonary impairment. Instead, Dr. Hippensteel gave the opinion that Mr. Epling did not have any disabling intrinsic lung disease from any cause. (JA, pg. 420).

The finding of no pulmonary impairment by Dr. Hippensteel is contrary to the finding of the administrative law judge in his initial and subsequent decisions that the miner did have a totally disabling pulmonary impairment. (JA, pg. 59, 85). Furthermore, the administrative law judge's finding of a totally disabling pulmonary impairment in his initial decision was affirmed by the Benefits Review Board. (JA, pg. 68-69). Therefore, Dr. Hippensteel's opinion that there is no pulmonary impairment is contrary to the law of this case. U.S. v Aramony, 166 F. 3d 655 (4th Cir. 1999).

In failing to diagnose a disabling pulmonary impairment, Dr. Hippensteel necessarily failed to address the cause of the miner's pulmonary impairment in his report offered on February 19, 2012. Thus, as there is no evidence from Dr. Hippensteel in this record subsequent to Dr. Hippensteel's diagnosis of simple pneumoconiosis addressing the cause of the miner's pulmonary impairment, the administrative law judge properly rejected Dr. Hippensteel's opinion concerning cause of disability.

The claimant would further point out that the reasons given by Dr. Hippensteel for his opinion that the miner's pulmonary impairment has not been contributed to by his coal mine dust exposure are the same reasons given by Dr. Crisalli for his opinion that the miner's coal mine dust exposure did not contribute to the miner's pulmonary impairment. (JA, pg. 191, 211-212, 248-249, 273-276).

The employer has not appealed the portion of the administrative law judge's decision which found that Dr. Crisalli's opinion did not constitute substantial evidence that the miner's pulmonary impairment had not been contributed to by the miner's coal mine dust exposure. Thus, the portion of the administrative law judge's decision that Dr. Crisalli's opinion does not constitute substantial evidence that the miner's pulmonary impairment has not been contributed to by his coal mine dust exposure is now the law of the case. <u>Aramony</u>.

As the basis for Dr. Hippensteel's opinion concerning disability causation is the same basis for Dr. Crisalli's opinion concerning disability causation which is now the law of the case, the law of the case is that that basis does not constitute substantial evidence to support a finding that the miner's pulmonary impairment was not contributed to by his coal mine employment. Accordingly, the administrative law judge's decision to discredit Dr. Hippensteel's opinion concerning disability causation should be affirmed.

2.         THE EMPLOYER IS INCORRECT
IN ITS RELIANCE UPON <u>SECURITIES</u>
<u>AND EXCHANGE COMMISSION V.</u>
<u>CHENERY CORP.</u>, 318 U.S. 80 (1942)

The employer argues that the Benefits Review Board affirmed the award of benefits on different grounds than those used by the administrative law judge to award benefits and, therefore, the decision of the Benefits Review Board is contrary to the holding in <u>Securities and Exchange Commission v. Chenery</u>

25

Corporation, 318 U.S. 80 (1942).  While, as argued below, the claimant does not believe that the Benefits Review Board affirmed the award of benefits on grounds which were different than those used by the administrative law judge to award benefits, the employer's reliance upon Chenery is incorrect.

Chenery addresses the separation of powers between the judicial and the executive branches.   Both the Benefits Review Board and the administrative law judge are part of the executive branch.  Therefore, since both the Benefits Review Board and the administrative law judge are part of the executive branch, there is no separation of powers argument that would apply to any differences between the decision of the Benefits Review Board and that of the administrative law judge. Accordingly, the employer's argument is in error.

The claimant would submit that, contrary to the employer's argument, Chenery provides support for this Court to not disturb the decision of the Benefits Review Board.  In reviewing agency action, a court may not "intrude upon the domain which Congress has exclusively entrusted to an administrative agency." Chenery, at 88.  Therefore, a court must only consider the record made before the agency at the time the agency acted.  Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971).  The agency record does not refer simply to the facts presented to the agency but also includes the reasons given by the agency for taking the action.  Chenery, at 87-88; Dow Agrosciences, LLC v. National Marine

Fisheries Service, 707 F. 3d 462 (4th Cir. 2013). Thus, Chenery supports a

decision by this Court to not disturb the affirmance of benefits by the Benefits

Review Board.

  The role of the administrative law judge and the Benefits Review Board in

the Department of Labor's procedure for hearing federal black lung claims is

analogous to the role of a United States District Court and a United States Court of

Appeals. When reviewing a decision of a lower court an appellate court will

affirm the decision of the lower court if sound grounds therefore appear,

irrespective of the reasons given by the lower court. United States v. Laird, 494 F.

2d 709 (4th Cir. 1974). Therefore, just as a United States Court of Appeals may

affirm a district court's decision on other grounds, the Benefits Review Board may

affirm the decision of an administrative law judge on grounds other than those

found by the administrative law judge, if sound grounds do appear.

  The justification for the difference is that a reviewing court may formulate

the grounds upon which a lower court should have acted. However, an Article III

court may not initially decide a question which is committed to an agency for

initial determination. 2 Davis Administrative Law, § 16.12 at p. 482; Denver & R.

G. W. R. Co. v. Union P. R. Company, 351 U.S. 321, at 337 and 331 (1956).

Accordingly, as the Benefits Review Board did have the right to affirm the

administrative law judge's decision on other grounds, so long as there were other sound grounds therefore, the employer's argument is misplaced.

While the employer's argument is in error as <u>Chenery</u> does not apply to the procedural history of this case, the employer is also incorrect when it argues that the Benefits Review Board affirmed the decision of the administrative law judge on grounds other than those given by the administrative law judge. The Benefits Review Board affirmed the decision of the administrative law judge to give Dr. Hippensteel's opinion as to disability causation less weight because of the judge's finding that Dr. Hippensteel had not diagnosed pneumoconiosis at the time of the giving of his opinion as to disability causation. (JA, pg. 99).

A review of the administrative law judge's decision reflects that the grounds used by the Benefits Review Board are the same grounds upon which the administrative law judge rejected Dr. Hippensteel's opinion as to disability causation. The administrative law judge noted that while Dr. Hippensteel did diagnose simple pneumoconiosis after his 3/25/11 deposition, at the time of Dr. Hippensteel's 3/25/11 deposition, when he gave his last opinion as to disability causation, Dr. Hippensteel had not diagnosed pneumoconiosis. (JA, pg. 89). Therefore, the administrative law judge did reject Dr. Hippensteel's opinion as to disability causation in light of the fact that, at the time that Dr. Hippensteel gave his opinion as to disability causation, he did not diagnose pneumoconiosis. As properly found

28

by the administrative law judge, Dr. Hippensteel did later diagnose simple pneumoconiosis but, at that time, did not give an opinion as to disability causation. (JA, pg. 89). Therefore, the Benefits Review Board affirmed the administrative law judge's finding as to Dr. Hippensteel's disability causation opinion upon the same grounds as given by the administrative law judge.

3.    THE EMPLOYER'S ARGUMENT THAT THE
ADMINISTRATIVE LAW JUDGE IMPERMISSIBLY
RESTRICTED ITS MEANS OF REBUTTAL
WITH REGARD TO THE PRESUMPTION AT
30 U.S.C. § 921 (c) (4) IS INCORRECT

The purpose of the Black Lung Benefits Act is to provide benefits "to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease."  30 U.S.C. § 901 (a). In general, a miner seeking federal black lung benefits must prove, by direct evidence or via presumption, that "(1) he has pneumoconiosis; (2) his pneumoconiosis arose at least in part out of his coal mine employment; (3) he is totally disabled; and (4) the total disability is due to pneumoconiosis." Morrison v. Tennessee Consolidated Coal Co., 644 F. 3d 473, at 478 (6th Cir. 2011). Pneumoconiosis includes both clinical and legal pneumoconiosis.  20 C.F.R. § 718. 201 (a) (2).

30 U.S.C. § 921 (c) (4) provides that if a miner was employed for 15 years or more in one or more underground coal mines and it is established that the miner

has a totally disabling pulmonary impairment, then a rebuttable presumption arises that the miner is totally disabled due to pneumoconiosis.  The presumption of total disability due to pneumoconiosis may only be rebutted by a showing either that the miner did not have pneumoconiosis or that his pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.  30 U.S.C. § 921 (c) (4).  On March 23, 2010 the effective date of 30 U.S.C. § 921 (c) (4) was amended so as to apply to claims filed after January 1, 2005 which were pending on, or after, March 23, 2010.  Pub. L. No. 111-148, § 1556 (a), 124 Stat. 199 (2010).

The employer argues that the two rebuttal methods set forth  in 30 U.S.C. § 921 (c) (4) do not apply to the employer as the statute states that it is the Secretary who may rebut the presumption by the above two noted means of rebuttal.  The employer bases its argument upon the wording of the statute and upon the holding of the U.S. Supreme Court in <u>Usery v. Turner-Elkhorn Mining Company</u>, 428 U.S. 1 (1976) in which the court stated that the rebuttal limitations of 30 U.S.C. § 921 (c) (4) do not apply operators.  The employer errs in its argument in light of the fact that there has been a substantive change in the Black Lung Benefits Act since the time of the <u>Usery</u> such that the available means of rebuttal have changed.

When <u>Usery</u> was decided in 1976 a miner could only receive federal black lung benefits if he had clinical pneumoconiosis which contributed to a totally disabling pulmonary impairment.  If a miner had a pulmonary impairment which

had been contributed to by his coal mine dust exposure but did not have clinical pneumoconiosis, then the miner was not eligible for benefits under the Black Lung Benefits Act.  Accordingly, at the time of Usery, the presumption of 30 U.S.C. § 921 (c) (4) could be rebutted by three different methods.

The three methods of rebuttal available to an operator at the time of Usery were that the operator could rebut the presumption by proving either (1) that the miner did not have clinical pneumoconiosis, (2) that the miner's disability did not arise from the miner's exposure to coal dust, or (3) that the miner's disability resulted from a disabling lung disease caused by coal mine dust exposure that was not pneumoconiosis.  Therefore, at the time of the decision in Usery in 1976, if the rebuttal limitations of 30 U.S.C. § 921 (c) (4) were applied to operators, the operator would be required to pay benefits to a miner who was not disabled by clinical pneumoconiosis, a result that would be contrary to the fact that only miners who had clinical pneumoconiosis could receive benefits in 1976 when Usery was decided.

On March 1, 1978, after the Usery decision in 1976, Congress expanded the definition of pneumoconiosis to include what is now known as legal pneumoconiosis.  Black Lung Benefits Reform Act of 1977, Pub. L. 95-239 Section 2 (b), 92 Stat. 95 (March 1, 1978).   Legal pneumoconiosis includes "any chronic lung disease or impairment and its sequelae arising out coal mine

employment."  20 C.F.R. § 718.201 (a) (2).  Any chronic lung disease that is "significantly related to, or substantially aggravated by" exposure to coal mine dust is legal pneumoconiosis.  20 C.F.R. § 718.201 (b).

Due to the substantive change of the law in 1978 whereby coal miners who did not have clinical pneumoconiosis but did have a totally disabling pulmonary disease caused by coal mine dust exposure were now eligible for benefits, Usery's discussion of the rebuttal limiting sentence no longer had any effect.  Due to this substantive change of the law in 1978 an operator could no longer rebut the presumption of 30 U.S.C. § 921 (c) (4) by proving that a miner's disability resulted from a lung disease caused by coal mine dust exposure that was not pneumoconiosis.  Because the definition of pneumoconiosis contained in 20 C.F.R. § 718.201 includes both clinical and legal pneumoconiosis, the opposing party, after 1978, must rebut legal as well clinical pneumoconiosis, so that the opposing party must establish that the miner is not disabled by such disease.  Pavesi v. Director, OWCP, 758 F. 2d 956 (3rd Cir. 1985); Shonborn v. Director, OWCP, 8 BLR 1-434 (1986).

Because, since 1978, the employer must rebut legal as well as  clinical pneumoconiosis, the only possible means of rebuttal available to an employer are for the employer to rebut the existence of the disease or disability causation.  While the employer argues that a third method of rebuttal should be allowed with that

32

method being to prove that the miner only had mild pneumoconiosis which was not a substantial contributing cause of his pulmonary impairment, such potential third method of rebuttal is part of disability causation and therefore is a not a third method of rebuttal.

As argued more fully below in this brief, the employer's proposed third method of rebuttal merely addresses the applicable standard by which the employer must establish that the miner's pulmonary impairment was not contributed to by his coal mine dust exposure. Accordingly, the employer was not improperly limited in its ability to rebut the presumption of 30 U.S.C. § 921 (c) (4) and its argument to the contrary must fail.

After the definition of pneumoconiosis was changed in the statute in 1978 the Department of Labor, in 1980, adopted 20 C.F.R. § 718.305. The 1980 version of 20 C.F.R. § 718.305 is the regulation which implemented the presumption of 30 U.S.C. § 921 (c) (4). The 1980 version of 20 C.F.R. § 718.305 lists the same two exclusive methods of rebuttal and did not limit their application to the Secretary. In addressing the 1980 version of 20 C.F.R. § 718.305 this Court has repeatedly held that operators are limited to the two exclusive methods of rebuttal set forth in 20 C.F.R. § 718.305 which are the same two methods of rebuttal set forth in the statute, 30 U.S.C. § 921 (c) (4).

In a case in 1979 predating the adoption of 20 C.F.R. § 718.305 in 1980 but after the enactment of 30 U.S.C. § 921 (c) (4), this Court held, in Clinchfield Coal Company v. Fleming, 606 F. 2d  441 (4th Cir. 1979), that the employer had failed to rebut the presumption of 30 U.S.C. § 921 (c) (4) because the employer had failed to establish that the miner did not have pneumoconiosis or that his respiratory impairment did not arise out of his employment.  Fleming, at 442.  In 1980 this Court held that the employer could only rebut the presumption of 30 U.S.C. § 921 (c) (4) by a showing either that the miner did not have pneumoconiosis or that the miner's impairment did not arise out of, or in connection with, employment in a coal mine.  Rose v. Clinchfield Coal Company, 614 F. 2d 936, at 939.

In 1984, in Bethlehem Mines Corporation v. Massey, 736 F. 2d 120 (4th Cir. 1984), although addressing the validity of 20 C.F.R. § 727.203 (b) (3), this Court held that the language of 20 C.F.R. § 727.203 (b) (3), providing that the presumption of total disability due to pneumoconiosis would be rebutted if the evidence establishes that the total disability of the miner did not arise in whole or in part out of coal mine employment, closely mirrors the standard of rebuttal that Congress itself articulated for cases involving the 15 year presumption of total disability under 30 U.S.C. § 921 (c) (4).   Massey, at 124.

34

In 2013, in addressing the current amendment to 30 U.S.C. § 921 (c) (4), this Court held that the employer is limited to rebutting the presumption by showing either that the miner does not have pneumoconiosis or that his pulmonary impairment did not arise out of, or in connection with, employment in a coal mine, citing to 20 C.F.R. § 718.305 (a). Westmoreland Coal Company, Inc. v. Director, OWCP [Swiney], 2013 W L 5405499 (4th Cir. 9/27/13 (unpub.). While Swiney is unpublished, it is consistent with this Court's past precedent.

In 2013 the Department of Labor promulgated a new version of 20 C.F.R. § 718.305 in order to carry out the intended purpose of the newly amended version of 30 U.S.C. § 921 (c) (4). In the 2013 version of 20 C.F.R. § 718.305, just as in the 1980 version of 20 C.F.R. § 718.305, the Department of Labor provided that the presumption of 30 U.S.C. § 921 (c) (4) could only be rebutted by an operator where the operator showed that the miner did not have pneumoconiosis or that no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis as defined in 20 C.F.R. § 718.201. 20 C.F.R. § 718.305 (d) (i) (A,B), (ii). Thus, both the 1980 and the 2013 versions of 20 C.F.R. § 718.305 limit rebuttal on the part of an operator to the same two methods.

While this Court has not yet rendered a decision as to whether an operator is limited to the two exclusive rebuttal methods set forth in the current version of 30 U.S.C. § 921 (c) (4) the Sixth Circuit has addressed such issues. In Morrison v.

35

Tennessee Consolidated Coal Company, 644 F. 3d 473 (6th Cir. 2011) the Sixth

Circuit held that in order to rebut the presumption of 30 U.S.C. § 921 (c) (4) an

employer must establish that the miner does not, or did not, have pneumoconiosis,

or that his respiratory or pulmonary impairment did not arise out of, or in

connection with, employment in a coal mine, citing to 30 U.S.C. § 921 (c) (4) and

to 20 C.F.R. § 718.305.  Morrison, at 479.

    In Big Branch Resources, Inc. v. Ogle, 737 F. 3d 1063 (6th Cir. 2013) in a

decision issued after the promulgation of the current version of 20 C.F.R. §

718.305, the Sixth Circuit again held that the operator is limited to rebutting the

presumption of 30 U.S.C. § 921 (c) (4) by showing either that the miner either did

not have pneumoconiosis or that his pulmonary impairment was not caused by his

coal mine dust exposure.  In Ogle, the Court addressed the same argument that the

employer has made in this case, that a third method of rebuttal exists by which an

employer can rebut the presumption by showing that the miner's pneumoconiosis

is mild and that the totally disabling pulmonary impairment is the product of

another disease.  The Sixth Circuit held that such argument is not a unique third

rebuttal method, rather, merely being a specific way to attack the second link in the

causal chain, with that second link being that pneumoconiosis caused the miner's

total disability.  Ogle, at 1069-1070.

The claimant would respectfully request that this Court find, as has the Sixth Circuit, that the operator is limited to the two methods of rebuttal set forth in 30 U.S.C. § 921 (c) (4). Such a ruling would be in accord with the previous precedent of this Court in addressing the same statute. <u>Fleming</u>; <u>Rose</u>; <u>Massey</u>; <u>Swiney</u>. The claimant would submit that there has been no reason shown why this Court should break with its past precedent. Accordingly, the claimant would respectfully request that this Court hold that the employer is limited to the two exclusive rebuttal methods set forth in 30 U.S.C. § 921 (c) (4) as enforced by 20 C.F.R. § 718.305.

4.      THE DIRECTOR HAS THE AUTHORITY TO
        PROMULGATE A REGULATION WHICH LIMITS
        AN OPERATOR TO TWO EXCLUSIVE METHODS
        OF REBUTTAL SET FORTH IN 30 U.S.C. § 921 (c) (4)

The employer argues that the Director does not have the authority to promulgate a regulation that would limit the operator to the two exclusive rebuttal methods set forth in 30 U.S.C. § 921 (c) (4). The claimant would submit that the employer's argument should be rejected.

The Secretary has been given considerable power under the Black Lung Act to formulate regulations controlling eligibility determinations. 30 U.S.C. § 921. The Secretary's exercise of that power in promulgating a regulation such as 20 C.F.R. § 718.305 is within its rule making authority and serves the broad remedial purposes of the statute. <u>Hampton v. Department of Labor</u>, 678 F. 2d 506, at 508;

37

Rose, at 936.  The Director's interpretation of a statute should be deferred to where such interpretation is a permissible interpretation of the statute.  Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, at 842 (1984).

As previously noted, the 2013 version of 20 C.F.R. § 718.305 limits the operator to the same two rebuttal methods as did the 1980 version of 20 C.F.R.  § 718.305.  This Court found that the 1980 version of 20 C.F.R. § 718.305 applied to operators and limited operators to the exclusive methods of rebuttal set forth in 30 U.S.C. § 921 (c) (4).  Fleming; Rose.  This Court and the Sixth Circuit have held that the 2013 version of 20 C.F.R. § 718.305 properly limits an operator to the two exclusive rebuttal methods set forth in 30 U.S.C. § 921 (c) (4). Swiney; Morrison; Ogle.

The claimant would submit that the Director's interpretation of the statute through its promulgation of the 2013 version of 20 C.F.R.  § 718.305 is a reasonable interpretation of 30 U.S.C.  § 921 (c) (4) especially since the employer has proposed no other method of rebuttal which would not be encompassed by either rebutting the existence of the disease or disability causation.   Therefore, this Court should find that the 2013 version of 20 C.F.R § 718.305 which limits the employer to the exclusive rebuttal methods set forth in 30 U.S.C. 921 (c) (4) is a valid regulation.

The employer argues that since the wording of 30 U.S.C. § 921 (c) (4) was the same at the time of the ruling in Usery as it is now that the United States Supreme Court's decision in Usery prevents the Director from changing the methods of rebuttal from those allowed by the court in Usery.  The employer relies upon the United States Supreme Court's decision in United States v. Home Concrete & Supply, LLC, 132 S.Ct. 1836 (2012) for its position.

In Home Concrete, the question before the court was the interpretation of a 1954 reenactment of a 1939 statute that was contained in the Internal Revenue Code.  The court noted that the operative language of both statutes was identical. The court in Home Concrete held that since it had already addressed the interpretation of the statute in Colony, Inc. v. Commissioner, 357 U.S. 28 (1958) the court would not change its interpretation of the statute.

The difference in the situation in the instant case and that in Home Concrete is that in Home Concrete while there had been some changes in other portions of the tax law, there had been no substantive change in the law which affected the statute which was being considered.  In contrast, in the instant case, we have had a substantive change in the law since, as previously noted, in 1978, after the 1976 Usery decision, Congress changed the federal black lung law by recognizing legal pneumoconiosis as a compensable form of pneumoconiosis.  Therefore, since there has been a substantive change in the federal black lung law since the Usery

decision in 1976 <u>Home Concrete</u> does not apply in light of the fact that there was no substantive change in the tax law relative to the statute in question.

Furthermore, while the employer is correct that the wording of the statute has not changed since the decision in <u>Usery</u> in 1976, the claimant would submit that the Director's current regulation does serve the purpose of Congress. Congress is presumed to enact legislation with knowledge of the interpretation that courts have given to existing legislation. <u>U.S. v. Langley</u>, 62 F. 3d 602, at 605. (4th Cir. 1995). The fact that Congress is presumed to know what the law is especially true when one considers that Senator Byrd, who was the proponent of the amendment to 30 U.S.C. § 921 (c) (4), served the state of West Virginia, a state within the jurisdiction of this Court.

Since at least 1979 it has been the law in this Circuit that the operator is limited to the two exclusive rebuttal methods set forth in 30 U.S.C. § 921 (c) (4). <u>Fleming</u>. Since we must presume that Congress was aware of the law of this Circuit, the claimant would submit that the regulation promulgated by the Director which limits the operator to the two exclusive methods of rebuttal set forth in 30 U.S.C. § 921 (c) (4) fulfills the intent of Congress with regard to the handling of federal black lung claims. Therefore, the employer's argument to the contrary should be rejected.

5.         THE RULE OUT STANDARD IS THE
                APPROPRIATE STANDARD TO USE
                IN DETERMINING WHETHER THE
                EMPLOYER HAS ESTABLISHED THAT
                THE MINER'S PULMONARY IMPAIRMENT
                WAS NOT CAUSED BY HIS COAL
                DUST EXPOSURE

The claimant would first of all point out that, while the employer argues that

the rule out standard is not the appropriate standard to use, the employer

acknowledges in its brief that the administrative law judge in this case did not

apply the rule out standard in order find that the employer had not established that

the miner's pulmonary impairment was not related to his coal mine dust exposure.

(Petitioner's Opening Brief, at p. 36). Therefore, as the rule out standard is not a

proper issue before this Court, this Court should not address whether such standard

was the appropriate standard to be used. Notwithstanding the fact that the rule out

standard is not an appropriate issue in this case, since the employer has devoted a

considerable portion of its opening brief to such issue, the claimant will address

such issue.

An operator seeking to rebut the 15 year presumption on disability causation

grounds must rule out any connection between the miner's disability and his coal

mine dust exposure. The fact that the rule out standard applies is clear from a

reading of the regulation implementing the presumption which provides "...the

party opposing entitlement may rebut the presumption by ...establishing that no

part of the miner's death was caused by pneumoconiosis as defined in § 718.201."

20 C.F.R. § 718.305 (d) (ii).

In addressing the rule out standard in <u>Ogle</u>, the Sixth Circuit stated:

> Where the burden is on the employer to
> disprove a presumption, the employer
> must "rule-out" coal mine employment as
> a cause of the disability. ...Because the
> burden here is on the Fund, the Fund must
> show that the coal mine employment
> *played no part* in causing the total disability.
> <u>Ogle</u>, 1071.

The Sixth Circuit, in discussing the rule out standard, noted that this Court

has consistently applied the same standard for rebutting disability causation citing

to <u>Stiltner v. Island Creek Coal Co.</u>, 86 F. 3d 337, at 339 (4th Cir. 1996). As

previously noted, the precedent of this Court is that the rule out standard is the

appropriate standard in addressing disability causation. <u>Fleming</u>; <u>Rose</u>; <u>Massey</u>,

<u>Stiltner</u>; <u>Swiney</u>.

Both the Ninth Circuit and the Tenth Circuit have held that the rule out

standard is the appropriate standard to use in addressing disability causation.

<u>Palmer Coking Coal Company v. Director, OWCP</u>, 720 F. 2d 1054 (9th Cir. 1983);

<u>Rosebud Coal Sales Company v. Weigand</u>, 831 F. 2d 926 (10th Cir. 1987). The

employer must produce sufficient evidence to rule out any causal link between the

disability and the coal mine employment. <u>Palmer Coking Coal Company</u>, at 1058.

The Tenth Circuit specifically held that the employer's argument that a third rebuttal method showing that the miner only had mild pneumoconiosis which did not contribute to his pulmonary impairment should not be allowed noting that the "significant part" test is totally at odds with the applicable standard, noting that 20 C.F.R. § 727.203 (b) (3), containing similar language to that in 20 C.F.R. § 718.305 concerning disability causation rebuttal, requires that any relationship between the disability and coal employment be ruled out.  Weigand, at 928.

The claimant would submit that, based upon this Court's past precedent, the holding of the Sixth Circuit in Ogle, and the holdings of the Ninth and Tenth Circuits in addressing similar language concerning disability causation rebuttal in 20 C.F.R. § 727.203 (b) (3), this Court should hold that the rule out standard is the appropriate standard to use with regard to disability causation rebuttal.  Therefore, the employer's argument to the contrary should be rejected.

6.     THE RULE OUT STANDARD PLAYED NO
ROLE IN THE DECISION IN THIS CASE

As previously noted, the employer has acknowledged that the administrative law judge did not use the rule out standard in determining that the employer had not established that the miner's disability causation was not related to his coal mine employment.  The administrative law judge found that the opinion of Dr. Hippensteel was not sufficient to establish that the miner's pulmonary impairment had not been contributed to by his coal mine dust exposure as, when Dr.

Hippensteel gave his disability causation opinion, Dr. Hippensteel was of the opinion that Mr. Epling did not have pneumoconiosis. (JA, pg. 89). Therefore, since Dr. Hippensteel, at the time of the of disability causation opinion, was of the opinion that Mr. Epling did not have pneumoconiosis, the administrative law judge properly found that Dr. Hippensteel's disability causation opinion did not constitute substantial evidence to support a finding that the miner's pulmonary impairment was not contributed to by his coal mine dust exposure in accord with this Court's decision in <u>Scott v. Mason Coal Co.</u>, 289 F. 3d 263 (4th Cir. 2002). Accordingly, since the rule out standard was not applied in this case, regardless of this Court's ruling concerning the appropriateness of the rule out standard, the decision of the administrative law judge to award benefits should be affirmed.

VI.          <u>CONCLUSION</u>

As the decision of the administrative law judge to award benefits is based upon substantial evidence, is rational, and is in accord with the applicable law, the decision of the Benefits Review Board affirming the administrative law judge's award of benefits should be affirmed.

## VII.   REQUEST FOR ORAL ARGUMENT

The claimant respectfully request that this matter be scheduled for oral argument.  This case is one of several cases pending before this Court addressing the amendment of 30 U.S.C. § 921 (c) (4).  Accordingly, the claimant believes that oral argument will be helpful to this Court in addressing the issues which have been raised.

VIII.  <u>ADDENDUM OF UNPUBLISHED CASES</u>

<u>Westmoreland Coal Co. , Inc. v. Director, OWCP, [Swiney]</u>, 2013 WL 5405499 (4th Cir. 9/27/13) (unpub.)

Respectfully submitted,


<u>/S/LEONARD J. STAYTON</u>
ATTORNEY AT LAW
P.O. BOX 1386
INEZ, KY  41224
(606) 298-5117

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

I hereby certify that an original and seven copies of the foregoing Response Brief on Behalf of Respondent, Carl Epling, have been mailed to Ms. Patricia S. Connor, Clerk, U.S. Court of Appeals for the Fourth Circuit, 1100 East Main Street, Suite 501, Richmond, VA  23219-3517; and one copy filed electronically with the U.S. Court of Appeals which will serve the Brief upon all parties of record this 28th day of January, 2014.

/S/LEONARD J. STAYTON
ATTORNEY AT LAW
P.O. BOX 1386
INEZ, KY  41224
(606) 298-5117

Ms. Betty English: english.betty@dol.gov

Ms. Ashley Harmon: aharman@jacksonkelly.com

Ms. Sarah Marie Hurley: hurley.sarah@dol.gov

Mr. Thomas O. Shepherd, Jr., Clerk (aty):  shepherd.thomas@dol.gov

Mr. Gary K. Stearman: stearman.gary@dol.gov

Ms. Rae Ellen James: BLLS-SOL@dol.gov

/S/ LEONARD STAYTON

Westlaw Delivery Summary Report for STAYTON,LEONARD

| | |
|---|---|
| Date/Time of Request: | Tuesday, January 28, 2014 13:50 Central |
| Client Identifier: | CARL EPLING, JR FBL |
| Database: | FEDFIND |
| Citation Text: | --- Fed.Appx. ---- |
| Lines: | 144 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Westlaw.

--- Fed.Appx. ----, 2013 WL 5405499 (C.A.4)
(Cite as: 2013 WL 5405499 (C.A.4))

Only the Westlaw citation is currently available.This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter.  See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007.   See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)

United States Court of Appeals,
Fourth Circuit.
WESTMORELAND COAL COMPANY, INCORPORATED, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United States Department Of Labor; Haskell Swiney, Respondents.

No. 13–1198.
Sept. 27, 2013.
Submitted Sept. 19, 2013.
Decided Sept. 27, 2013.

**Background:** Coal company petitioned for review of an order of the Benefits Review Board affirming an administrative law judge's (ALJ's) award of benefits to former employee under the Black Lung Benefits Act.

**Holdings:** The Court of Appeals held that:
(1) claimant was entitled to 15-year presumption of total disability based on arterial blood gas studies, and
(2) coal company failed to rebut that presumption.

Petition denied.

West Headnotes

**[1] Labor and Employment 231H** ⬤⟲2688(1)

231H Labor and Employment
    231HXV Mines
        231HXV(B) Pneumoconiosis; Black Lung Benefits
            231Hk2685 Evidence
                231Hk2688 Weight and Sufficiency
                    231Hk2688(1) k. In General. Most Cited Cases
    Arterial blood gas studies were sufficient to establish miner's entitlement to 15-year presumption of total disability under the Black Lung Benefits Act, notwithstanding contrary evidence presented by employer's physicians. Federal Mine Safety and Health Act of 1977, § 411(c)(4), 30 U.S.C.A. § 921(c)(4); 20 C.F.R. § 718.305(a).

**[2] Labor and Employment 231H** ⬤⟲2688(1)

231H Labor and Employment
    231HXV Mines
        231HXV(B) Pneumoconiosis; Black Lung Benefits
            231Hk2685 Evidence
                231Hk2688 Weight and Sufficiency
                    231Hk2688(1) k. In General. Most Cited Cases
    Employer that failed to establish that miner did not have pneumoconiosis or that his respiratory impairment did not arise out of his employment in a coal mine failed to affirmatively rebut 15-year presumption of total disability under Black Lung Benefits Act. Federal Mine Safety and Health Act of 1977, § 411(c)(4), 30 U.S.C.A. § 921(c)(4); 20 C.F.R. §§ 718.201(a)(2), 718.305(a).

On Petition for Review of an Order of the Benefits Review Board. (12–0126–BLA).Paul E. Frampton, Thomas M. Hancock, Bowles Rice LLP, Charleston, WV, for Petitioner.

Joseph Wolfe, Ryan C. Gilligan, Wolfe, Williams, Rutherford & Reynolds, Norton, VI, for Respondent.

Before MOTZ, KEENAN, and DIAZ, Circuit Judges.

Petition denied by unpublished PER CURIAM opinion.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM.

*1 Westmoreland Coal Company ("Employer") petitions for review of the Benefits Review Board's ("Board") decision and order affirming the Administrative Law Judge's ("ALJ") award of benefits to former employee Haskell Swiney under the Black Lung Benefits Act ("Act"), 30 U.S.C.A. §§ 901–945 (West 2007 & Supp.2013). We deny the petition for review.

We review the Board's and the ALJ's legal conclusions de novo and "independent [ly] review ... the record to determine whether the ALJ's findings of fact were supported by substantial evidence." *Island Creek Coal Co. v. Compton,* 211 F.3d 203, 207–08 (4th Cir.2000) (internal quotation marks omitted). " 'Substantial evidence is more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). In conducting this review, we confine ourselves to the grounds on which the Board based its decision. *Daniels Co. v. Mitchell,* 479 F.3d 321, 329 (4th Cir.2007).

Subject to the substantial evidence requirement, we defer to the ALJ's credibility determinations and "evaluation of the proper weight to accord conflicting medical opinions." *Harman Mining Co. v. Dir., Office of Workers' Comp. Programs,* 678 F.3d 305, 310 (4th Cir.2012). The ALJ is not bound to accept any medical expert opinion but "must evaluate the evidence, weigh it, and draw his own conclusions," giving consideration to "the qualifications of the experts, the opinions' reasoning, their reliance on objectively determinable symptoms and established science, their detail of analysis, and their freedom from irrelevant distractions and prejudices." *Underwood v. Elkay Mining, Inc.,* 105 F.3d 946, 949, 951 (4th Cir.1997), *superseded on other grounds as stated in Elm Grove Coal Co. v. Dir., Office of Workers' Comp. Programs,* 480 F.3d 278, 287 (4th Cir.2007).

If a miner was employed in underground coal mines for fifteen or more years, has had a chest x-ray interpreted as negative for complicated pneumoconiosis, and demonstrates that he has a totally disabling respiratory or pulmonary impairment, he is entitled to a rebuttable presumption that he is totally disabled due to pneumoconiosis ("fifteen-year presumption"). FN* 30 U.S.C.A. § 921(c)(4); 20 C.F.R. § 718.305(a) (2013). Once the miner has established entitlement to the presumption, the employer "may rebut such presumption only by establishing that (A) such miner does not ... have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C.A. § 921(c)(4); *see* 20 C.F.R. § 718.305(a).

Employer does not dispute that Swiney was employed in underground coal mines for fifteen or more years and that all of the chest x-rays were interpreted as negative for complicated pneumoconiosis. Employer does dispute that Swiney demonstrated that he has a totally disabling respiratory or pulmonary impairment. Specifically, Employer argues that the ALJ erred in discounting the contrary medical opinions of its expert physicians on the issue of total disability.

*2 A miner may prove total disability through qualifying pulmonary function tests, qualifying arterial blood gas studies, a showing of cor pulmonale with right-sided congestive heart failure, or medical opinions. 20 C.F.R. § 718.204(b)(2)(i)-(iv) (2013); *see* 20 C.F.R. § 718.305(c) (requiring miner to prove total disability in accordance with § 718.204). The ALJ must, however, consider any contrary probative evidence in deciding whether the miner has met his burden. 20 C.F.R. § 718.204(b)(2); *see* 30 U.S.C. § 923(b) ("In determining the validity of claims ..., all relevant evidence shall be considered...."). "If contrary evidence does exist, the ALJ must assign the contrary evidence appropriate weight and determine whether it outweighs the evidence that supports a finding of total disability." *Lane v. Union Carbide Corp.,* 105 F.3d 166, 171 (4th Cir.1997).

[1] Upon review, we conclude that the ALJ complied with the Administrative Procedure Act and fully discussed and considered the opinions of Employer's physicians in finding that the medical opinions were insufficient contrary evidence to outweigh the qualifying arterial blood gas studies that the ALJ found established Swiney's total disability. *See Milburn Colliery Co. v. Hicks,* 138 F.3d 524, 532 n. 9 (4th Cir.1998) ("An ALJ has discretion to disregard an opinion unsupported by a sufficient rationale."). We are not permitted to reweigh the medical evidence. *Id.* at 536. Thus, we conclude that the ALJ did not err in finding that Swiney was entitled to the fifteen-year presumption.

[2] The burden then shifted to Employer to affirmatively "rebut such presumption only by establishing that (A) such miner does not ... have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C.A. § 921(c)(4); *see* 20 C.F.R. 718.305(a); *Morrison v. Tenn. Consol. Coal Co.,* 644 F.3d 473, 479–80 (6th Cir.2011). Upon review of the evidence submitted in this case, we conclude that substantial evidence supports the ALJ's finding that Employer failed to affirmatively rebut the presumption. *See* 20 C.F.R. 718.201(a)(2); *Harman Mining Co.,* 678 F.3d at 311. Thus, the ALJ did not err in awarding benefits under the Act.

Accordingly, we deny Employer's petition for review. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*PETITION DENIED*

FN* This presumption was restored by the Patient Protection and Affordable Care Act, Pub.L. No. 111–148, § 1556, 124 Stat. 119, 260 (2010).

C.A.4,2013.
Westmoreland Coal Co., Inc. v. Director, Office of Workers' Compensation Programs
--- Fed.Appx. ----, 2013 WL 5405499 (C.A.4)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Respectfully submitted,


/S/LEONARD J. STAYTON
ATTORNEY AT LAW
P.O. BOX 1386
INEZ, KY 41224
(606) 298-5117

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. <u>13-1738</u>    **Caption:** <u>Hobet Mining, LLC. v. Carl Epling, Jr.</u>

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]    this brief contains _____9,959_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ ]    this brief has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; **or**

   [ ]    this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

<u>(s) Leonard J. Stayton</u>

Attorney for <u>Carl Epling, Jr.</u>

Dated: <u>01/28/14</u>

## CERTIFICATE OF SERVICE

I hereby certify that an original and seven copies of the foregoing Response Brief on Behalf of Respondent, Carl Epling, have been mailed to Ms. Patricia S. Connor, Clerk, U.S. Court of Appeals for the Fourth Circuit, 1100 East Main Street, Suite 501, Richmond, VA 23219-3517; and one copy filed electronically with the U.S. Court of Appeals which will serve the Brief upon all parties of record this 28th day of January, 2014.

/S/LEONARD J. STAYTON
ATTORNEY AT LAW
P.O. BOX 1386
INEZ, KY 41224
(606) 298-5117

Ms. Betty English: english.betty@dol.gov

Ms. Ashley Harmon: aharman@jacksonkelly.com

Ms. Sarah Marie Hurley: hurley.sarah@dol.gov

Mr. Thomas O. Shepherd, Jr., Clerk (aty): shepherd.thomas@dol.gov

Mr. Gary K. Stearman: stearman.gary@dol.gov

Ms. Rae Ellen James: BLLS-SOL@dol.gov

/S/ LEONARD STAYTON